**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SIDNEY SMITH, HAUNTED HISTORY INC., ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 03-2531** |
| **CITY OF NEW ORLEANS** | **SECTION "T" (3)** |

**ORDER AND REASONS**

The above-captioned matter was heard on June, 13, 2005, before this Court, without a jury. The Court, having considered the record, the evidence, the applicable law, and the memoranda submitted by the parties, now makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. To the extent that any conclusion of law is deemed to be a finding of fact, it is adopted as such; and likewise, any finding of fact that is deemed to be a conclusion of law is so adopted.

**FINDINGS OF FACT**

With regard to the Court's findings, if no exhibit is specifically referenced, that particular finding is based upon the testimony given by various witnesses at trial.

1. In July of 2003, the City enacted Municipal Ordinance Sections 30-1489[1] to regulate walking tours in New Orleans in order to protect the safety and welfare of pedestrians, drivers and citizens of New Orleans and to ensure the residential privacy of New Orleans residents living in historical areas frequented by these tours.

2. The Plaintiffs only challenge provisions 2, 3, 4 and 5 of the Ordinance.[2]

3. Provision 2 of the Ordinance requires a "50 foot buffer zone." In other words, each tour group must be at least fifty (50) feet away from other tour groups.

4. Provision 3 of the Ordinance limits the number of people in each walking tour to a maximum of twenty-eight (28).

5. Provision 4 of the Ordinance prohibits tour guides and tour companies from soliciting on the streets in the City of New Orleans.

6. Provision 5 of the Ordinance requires that all walking tour groups in the French Quarter be disbanded every night by 10:00 p.m.

7. Prior to the passage of this Ordinance, walking tours were limited to a maximum of 47 people per tour group. However, prior to the enactment of 30-1489, the City did not require

---

[1] Section 30-1489–Walking Tour Guides Rules and Regulations. (1) Tour guides shall not be allowed to use voice amplifiers on walking tours. (2) During a tour narration, tour groups shall keep at least fifty (50) feet apart from other tour groups. (3) Tour groups shall be limited to twenty-eight (28) patrons per tour. (4) No solicitation by tour guides or tour companies is permitted on the streets in the City of New Orleans. (5) All tour groups shall be disbanded by 10:00 p.m. nightly in the French quarter and 6 p.m. in the Garden District.

[2] The Plaintiffs did not challenge the first provision of the Ordinance, which prohibits the use of voice amplifiers on walking tours because the Plaintiffs in this lawsuit have never used voice amplifiers and thus, the Plaintiffs do not have standing to challenge the first provision.

walking tours to be disbanded nightly.[3]

8. The 47 person limitation on walking tours was unsuccessful in that the sidewalks and the ingress and egress to businesses and homes was still blocked and people unsafely spilled into the streets blocking traffic.[4]

9. The Plaintiffs conduct walking tours for a fee, primarily in the Vieux Carre District or the French Quarter neighborhood of the City of New Orleans.[5]

10. The Plaintiffs' primary complaint was that the City of New Orleans violated its Constitutional rights by enacting an ordinance that unreasonably restricts the time, place and manner of the Plaintiffs' speech and these restrictions are not narrowly tailored to achieve a compelling state interest. [6]

11. The Plaintiffs also challenged the Ordinance because they claim that the "50 foot buffer zone,"requirement, the prohibition on solicitation and the disbandment provision are vague and operate to "chill" protected speech.[7]

12. The City of New Orleans contends that the Ordinance placed reasonable restrictions on the

---

[3] See Defendant's Exhibit 15: "Tour Guide Policies and Procedures," paragraph 22 and Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Summary Judgment, page 5, paragraph 3 (Doc. 19 filed on October 5, 2004).

[4] See Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 10, line 23 to page 12, line 21).

[5] Plaintiffs' Complaint, paragraph 3 (Doc. 1).

[6] Plaintiffs' Complaint, paragraph 5 & 6 (Doc. 1).

[7] Plaintiffs' Complaint, paragraph 6 (Doc. 1).

time, place and manner of walking tours to protect the health, safety, and welfare of pedestrians, drivers and citizens of New Orleans and to protect residential privacy of French Quarter residents.[8]

13. The streets of the French Quarter are often congested and the sidewalks are heavily trafficked. Thus, the regulation of walking tours serves to alleviate or reduce the congestion on the sidewalks. Without limiting the number of people in walking tours, citizens and visitors are forced to walk unsafely in the heavily trafficked streets because of the sidewalks are often blocked by these tour groups.

14. Before initiating these regulations, City officials investigated Ordinances from other historic cities, such as Charleston, South Carolina, because similar cities have comparable historical tour neighborhoods and regulations on walking tours.[9]

15. In her trial testimony, the Honorable Jacqueline Clarkson testified that other historic cities limit their tour groups to 20 to 30 people. She also testified that in determining the limitation, the main objective of City officials was to establish the number of people that could comfortably fit on the sidewalk. Additionally, the number 28 was established by dividing a typical bus load of 55 tourists in half, so that each bus load would only require

---

[8] Defendant's Exhibit 14: Letter from Council member Jacqueline Clarkson to other Council members, dated July 16, 2003 and Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 10, line 23 to page 12, line 21.

[9] Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 11, line 17-19. For example, the Code of the City of Charleston, South Carolina Section 29-261 limits walking tours to a maximum of 20 people per walking tour group and requires that a sufficient distance between each group must be maintained to prevent impeding pedestrian traffic.

2 tour guides. She also testified that 28 tourists in each group allowed the sidewalk to be relatively open so that people would not flow into the street. The City was mainly concerned with people in the streets impeding traffic and emergency vehicles and also with disturbing and waking residents in these historic areas.[10]

16. According to the testimony of Hon. Jacqueline Clarkson, all the other walking tour groups, aside from the Mr. Smith of the Haunted History Tours, agreed to the 28 person limitation.[11]

17. The 28 person group limitation and the 50 foot buffer zone between the tour groups were designed to work together to alleviate the congestion on the sidewalks. The 50 foot buffer zone requires that the tour groups stay at least 50 feet apart on the sidewalks. The 50 foot buffer zone would prevent two or more tour groups from bunching up and essentially defeating the purpose of the 28 person limit. City Officials decided on a 50 foot buffer zone because police had the ability to "eyeball" 50 feet and thus, they would be readily able to enforce this regulation.[12]

18. The combination of the 28 person limitation and the 50 foot buffer zone allows individuals to enter their residences and businesses, pass on the sidewalks without walking in the street and prevents tour group patrons from spilling into the streets. Thus, these regulations allow walking tours to be conducted, while still protecting citizens and visitors from the hazards

---

[10] Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 11, line 18 to page 12, line 19.

[11] Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 12, lines 16-21.

[12] Trial Transcript, Defense Witness, Hon. Jacqueline Clarkson, page 16, lines 8-18.

of walking in the streets and providing open access to residences and businesses.

19. The Plaintiff, Mr. Smith, admitted in his testimony that walking tours should be limited to a reasonable number of people. Mr. Smith testified that he thought the 47 person limit was reasonable.[13]

20. The 47 person limit still resulted in tourists and residents spilling into the street and causing a safety hazard for pedestrian and vehicular traffic.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of this matter based on the Federal question jurisdiction provided by 28 U.S.C. § 1331.

2. The United States Supreme Court has found that "[r]egulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny."[14] Section 30-1389 is a content-neutral restriction because it does not regulate the content of the tour guides' speech, but rather it restricts the time, place and manner of the speech.

3. Thus, because this Ordinance is content-neutral and an intermediate level of scrutiny applies, the City must show that (1) the restrictions on time, place and manner are narrowly tailored to serve a significant government interest, and (2) the restrictions must

---

[13] Trial Transcript, Plaintiffs' Witnesses, Sidney Smith, page 27, line 21 to page 28, line 7.

[14] *Turner Broadcasting System, Inc. v. Federal Communications Commission,* 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)

leave open ample alternative channels of communication.[15]

4. The City of New Orleans has a significant government interest in ensuring the public safety and order and in promoting the free flow of traffic on public streets and sidewalks. Additionally, the City has a significant interest in protecting the privacy and property rights of its citizens.

5. The Plaintiffs' opportunity to express ideas through the tours has not been greatly impacted, nor has the content of the tours been affected by the passage of this Ordinance.

6. The City has reasonably exercised its duty to promote the safety and order on its streets by creating this Ordinance that restricts the number of people in each tour group to 28 and by requiring that the tours end by 10:00 P.M. The Ordinance is a reasonable restraint on the First Amendment because it alleviates congestion on the streets, while only restricting the size of the tours and the hours of operation.

7. Without the restrictions on walking tours, citizens and visitors to the City are forced to unsafely walk in the streets where there is substantial vehicular traffic.

8. The "50-foot buffer zone" between the tour and the 28 person tour limitation was created to regulate pedestrian traffic and to keep the streets open for the movement of people and vehicles.

9. Additionally, the City has a strong interest in protecting the privacy of residents and

---

[15] *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (citing *Carey v. Brown*, 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980).

inhabitants of the people, who live in the French Quarter.

10. The loud noises from the tour guides and patrons disturb the peace and tranquility of the residents and business owners in the French Quarter.

11. The Ordinance serves a significant government interest, protecting residential privacy, by limiting the amount of people on the sidewalks at one time and restricting the walking tours to reasonable times of the day.

12. The Ordinance is narrowly tailored to serve the governmental interest of protecting residential privacy because it does not completely ban walking tours, but seeks only to eliminate their inherent problems by prohibiting oversized tour groups from walking the streets late into the night.

13. By reducing the size of the groups to 28 and requiring that tours stop at 10:00 P.M., the Ordinance is narrowly tailored to reduce the crowds to a size that can fit on the narrow sidewalks of the French Quarter and to limit the time of these tours to prevent them from becoming overly noisy or intrusive to the residences and businesses in the French Quarter.

14. The First Amendment permits the government to prohibit offensive speech as intrusive when the "captive" audience cannot avoid the objectionable speech.[16] The residents of the areas frequented by the walking tours are captive because they are trapped within their homes and have no means to avoid the unwanted speech.

15. Because the prohibitions in the Ordinance on the walking tours is narrow and limited, the

---

[16] *Frisby v. Schultz,* 487 U.S. 474, 484-487, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (citing *Consolidated Edison Co. v. Public Service Comm'n of New York*, 447 U.S. 530, 542, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980).

Ordinance allows ample alternatives of communications for the Plaintiffs. While the Plaintiffs are limited to groups no larger than 28 persons, they may still operate as many tours as they want as long as the tour groups are spaced 50 feet apart and end by 10 P.M.

16. Additionally, even though the Plaintiffs must end their tours by 10 P.M., they still have two to three hours of darkness in daylight savings time and four to five hours of darkness in non-daylight time to conduct their tours for visitors who prefer taking the tours at night.[17]

17. The Plaintiffs also claim that the Ordinance's prohibition against solicitation by tour guides, the "50 foot buffer zone" requirement, and the disbandment provision are constitutionally invalid on their face.[18]

18. An enactment can be challenged as constitutionally invalid on its face under two doctrines: the overbreadth doctrine and the vagueness doctrine.[19]

19. Under the overbreadth doctrine, an enactment may be considered invalid on its face if it inhibits the exercise of First Amendment rights, if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep."[20]

---

[17] Defendant's Post-Trial Memorandum, page 12 (citing U.S. Naval Observatory Sunrise and Sunset Table for Calendar Year 2005).

[18] Plaintiffs' Complaint, paragraph 6 and Plaintiffs' Post-Trial Memorandum, pages 30-33.

[19] *City of Chicago v Morales*, 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

[20] *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

The purpose of the overbreadth doctrine is to prevent the chilling of the constitutionally protected speech.[21]

20. Additionally, an enactment may be considered invalid on its face if the law is impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.[22]

21. Due process requires that an enactment be "void for vagueness" if its prohibitions are not clearly defined.[23] The void for vagueness doctrine requires that laws give fair notice to people of ordinary intelligence of what conduct is lawful or unlawful.[24] An impermissibly vague law creates the danger for the arbitrary and discriminatory application of the law.[25]

22. The Plaintiffs argue that the 50 foot buffer zone requirement is an "impossible strict liability standard," which effectively "chills" the speech of "anxious" tour guides who must completely abandon their rights to speech on public sidewalks because they are

---

[21] *Massachusetts v. Oakes,* 491 U.S. 576, 584, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989).

[22] *Morales,* 527 U.S. at 52. (citing *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

[23] *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33L.Ed.2d 22 (1972).

[24] *Id.*

[25] *Id.*

clueless and powerless to avoid criminal liability under this provision.[26]

23. The "50 foot buffer zone" requirement cannot be said to be unconstitutionally vague such that "men of common intelligence must necessarily guess at its meaning."[27] Nor is the Ordinance so "vague and standardless that it leaves the public uncertain as to the conduct it prohibits."[28]

24. The 50 foot buffer zone requirement operates only to prevent tour groups from merging and coming to a standstill on the sidewalks during a tour guide's narration. This provision is not so overbroad that it is impossible to comply with, nor should this provision operate to prevent Plaintiffs from exercising their free speech rights.

25. Further, the Plaintiffs contend that the requirement that the tours be "disbanded" by 10:00 p.m fails to give notice of the "degree and extent of dispersal necessary to satisfy the ordinance" and thus, the police have the unfettered discretion to determine whether the tour has been disbanded. The Plaintiffs contend the Ordinance makes it unclear whether a tour guide is allowed to leave the tour area with members of the tour group or if the tour guide may continue to talk about New Orleans history with a few members of the group after the group is disbanded.[29]

---

[26] Plaintiffs' Post-Trial Memorandum, page 31.

[27] *Grayned*, 408 U.S. at 108-114.

[28] *Morales*, 527 U.S. at 52 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

[29] Plaintiffs' Post-Trial Memorandum, page 32.

26. The disbandment requirement of provision (5) is not substantially overbroad as to chill the tour guides' speech, nor is it so vague that fails to give notice of the conduct which it prohibits. The disbandment requirement simply requires that the organized tour be ended at 10:00 p.m and that the large group disperse. This requirement does not prohibit a tour guide from communicating with individuals on any topic after 10:00 p.m. It only prohibits the continuation of an organized tour after 10:00 p.m.

27. Finally, the Plaintiffs contend that the prohibition on solicitation by tour guides or tour companies in the streets of New Orleans is "an impermissibly vague prohibition against any speech or expressive conduct by a tour guide or agent for a tour company in the public forum that is the streets of New Orleans." The Plaintiffs even suggest that the Ordinance is so vague that it may prohibit a tour guide from soliciting "Help, from a policeman when in trouble[.]"[30]

28. This prohibition is not vague, nor does it encompass all speech by a tour guide or tour company agent on the streets in New Orleans, as the Plaintiffs have suggested. This provision simply prohibits solicitation by tour guides on the streets in the City of New Orleans. Additionally, "men of common intelligence" would not believe that this provision makes seeking help from a police officer unlawful.[31]

29. Therefore, the Court finds that City of New Orleans Ordinance 30-1489 is a reasonable

---

[30] Plaintiffs' Complaint, paragraph 6 and Plaintiffs' Post-Trial Memorandum, page 33.

[31] *Grayned*, 408 U.S. at 108.

restriction on the time, place and manner. Further, the Court finds that Ordinance is not unconstitutionally vague or overbroad.

30. Accordingly, judgment is entered in favor of the Defendant, City of New Orleans, and against the Plaintiffs, dismissing the Plaintiffs' claims with prejudice, with each party to bear their own costs**.**

New Orleans, Louisiana, this 2nd day of February, 2006.

**G. THOMAS PORTEOUS, JR.**
**UNITED STATES DISTRICT JUDGE**